IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Melody Ann Robinson, Daniel Patrick Robinson, a Minor Child, by His Guardian, Kathy Regalman, ) ) ) ) | |
| Plaintiffs, ) ) | |
| ) | C.A. No.: 2:05-1855-PMD |
| v. ) ) | **ORDER** |
| MeadWestvaco Corporation Savings and Employee Stock Ownership Plan for Salaried and Non-Bargained Hourly Employees, and Barbara Jean Merritt, ) ) ) ) ) | |
| Defendants. ) ) | |

This matter is before the court upon Defendant Barbara Jean Merritt's ("Merritt") motion for summary judgment. For the reasons set forth herein, the court grants Merritt's motion for summary judgment.

**BACKGROUND**

Plaintiffs Melody Ann Robinson and Daniel Patrick Robinson ("Plaintiffs") are the natural children of Roy Robinson, a deceased former employee of Westvaco, now merged with Meadwestvaco Corporation.[1] As an employee, Roy had accrued certain benefits, including an interest in the MeadWestvaco Corporation Savings and Employee Stock Ownership Plan for Salaried and Non-Bargained Hourly Employees ("the plan"). On or about January 28, 1998, the decedent made a written beneficiary designation, whereby he designated his sister, Defendant Merritt, as the sole beneficiary of his interest in the 401(k) plan.

---

[1] Plaintiff Daniel Patrick Robinson is a minor child and is represented by his mother and guardian, Kathy Regalman. Daniel's father, Roy, died on March 19, 2004.

In this suit, Plaintiffs assert that some time after 1998, MeadWestvaco employed Hewitt Associates ("Hewitt") to administer the website for its benefit plans, and that all dealings by plan participants thereafter occurred online via the internet. Plaintiffs allege that in 2003, the decedent obtained a password and visited the plan's website with the intent to designate Plaintiffs as his named beneficiaries. In support of their allegations, Plaintiffs assert that no beneficiary was designated on the website and that the website contained the following statement: "Note: Beneficiary elections previously made on paper will no longer be valid. The elections made on this site, or through the Benefits Resource Center will take precedence over all other previous beneficiary elections." Another page of the website, the "Naming a Beneficiary" page, provided: "If you haven't named a beneficiary, and you're not married, your account is paid in this order when you die: (1) Your children, in equal shares; (2) Your parents, in equal shares; (3) Your siblings, in equal shares, and (4) Your estate." Thus, Plaintiffs argue that when the decedent visited and read the website, he believed that the language on the website meant that his written designation of Defendant Merritt was no longer valid and that Plaintiffs, as his children, were his beneficiaries. Defendants disagree with Plaintiffs' interpretation of the website language and deny that the website language had any effect on a previously executed written beneficiary designation.[2]

In any event, at some point after the decedent's death, Plaintiffs assert that agents of Hewitt, who were adjudicating Plaintiffs' claims, represented that Plaintiffs were the proper beneficiaries. However, Plaintiffs claim that some time thereafter, these agents wrongfully terminated processing

---

[2] A plan representative stated that "[t]he statement on the website regarding beneficiaries is intended to coach employees to make their beneficiary elections on the website and to convey that we will no longer accept new elections on forms. Once new elections were made on the website, the old forms will no longer be valid."

2

their claim and informed them that Defendant Merritt was the proper beneficiary. On or about December 15, 2004, the plan paid the funds at issue into an account established in Defendant Merritt's name. On May 4, 2005, the plan froze the account into which it had paid the funds.

On May 19, 2005, Plaintiffs filed an action in the Charleston County Court of Common Pleas seeking "a declaration that the beneficiaries of the benefits are, in fact: Melody [sic] Ann Robinson, and Daniel Patrick Robinson" and attempting to assert an interpleader action.[3] (Compl. ¶ 44.) Because this action is one to recover benefits under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), Defendant MeadWestvaco removed the action to federal district court on June 28, 2005. By consent of all of the parties, on July 8, 2005, the court stayed this action pending pursuit by Plaintiffs of the administrative remedies afforded them by the benefits plan. (Def.'s Opp. to Mot. to Lift Stay, Ex. 7.)

On September 9, 2005, Plaintiffs filed a motion to lift the stay and to amend their complaint. Defendants did not oppose Plaintiff's request to amend their complaint, but Defendant Merritt did oppose Plaintiff's request to permanently lift the stay. On October 31, 2005, this court filed an Order granting Plaintiffs' motion to lift the stay for the limited purpose of filing an amended

---

[3] Rule 22 expressly provides that interpleader is appropriate when a party "is or may be exposed to double liability." Fed. R. Civ. P. 22(1). Because Plaintiffs do not face potential double liability in this case, they technically are not the proper parties to assert an action for interpleader. However, the rule goes on to state that, "[a] defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim." Fed. R. Civ. P. 22(1). Here, it is at best questionable whether Defendant MeadWestvaco's willingness to interplead the funds, without a more formal cross-claim or counterclaim, would suffice under Rule 22. In any event, as the court explains below, even had this case presented the typical scenario whereby the fiduciary instigates an interpleader action to determine eligibility between competing claimants, the court still would find Defendant Merritt to be the proper beneficiary.

3

complaint; otherwise, the court denied Plaintiffs' motion to lift the stay.[4] On November 17, 2005, Plaintiffs filed their amended complaint, asserting a cause of action for declaratory judgment relief pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) and substituting the plan as a party Defendant in place of Defendant MeadWestvaco.

In a letter dated November 14, 2005, the Plan Administrator informed counsel for both parties that the Benefit Plans Administration Committee had considered Plaintiffs' administrative appeal and determined that "Mrs. Barbara J. Merritt is the rightful beneficiary of the aforementioned account." (Mot. to Lift Stay, Ex. 1.) Thereafter, on November 22, 2005, Plaintiffs filed a motion to lift the stay. This time, because Plaintiffs had fully exhausted their administrative remedies, the

---

[4] In their motion, Plaintiffs state: "Once Plaintiffs amend the complaint, they will assert a cause of action for declaratory relief pursuant to E.R.I.S.A. 29 U.S.C.S. § 1132(a)(1)(B) and, as stated above, presumably the plan will interplead its[] money leaving the two parties to submit what evidence they wish to submit to the court regarding the identity of the appropriate beneficiary. Accordingly, in the matter *sub judice*, no benefit claim has been denied." (Mot. to Amend at 4.) (emphasis in original). It is clear, however, that contrary to Plaintiffs' assertion, the plan denied Plaintiffs' claim. Not only had the plan determined that Defendant Merritt was the proper beneficiary, but also, the plan actually had paid the funds in question into an account in Defendant Merritt's name. In a letter from MeadWestvaco to Plaintiffs, Crystal Tate, the Corporate Benefits Specialist writes, "MeadWestvaco determined that Ms. Barbara Merritt is the intended beneficiary of Mr. Robinson's account in the Plan based upon having a properly executed beneficiary form. . . . should your clients disagree with the decision to deny their claim for benefits, they have the right to appeal in writing to the Plan Administrator." (Def. Merritt's Response, Ex. 9.)

On December 15, 2004, the Plan transferred the funds to an account in Merritt's name, stating: "This Statement is to confirm the monies that were recently transferred to you for the Savings Plan. Based upon the participant's beneficiary designation, you are entitled to 100% of ROY R. ROBINSON'S vested account balance as of December 15, 2004." (Def. Merritt's Response, Ex. 3.)

In light of the aforementioned, in the October 31, 2005 Order, this court rejected Plaintiffs' assertion that exhaustion of plan remedies is not required in this case. Rather, because the plan actually determined that Defendant Merritt was the proper beneficiary, thereby denying Plaintiffs' claim, the court required Plaintiffs to exhaust their administrative remedies. Thus, although the court granted Plaintiffs' request to amend their complaint, the court declined to permanently lift the stay because Plaintiffs had not fully exhausted their administrative remedies.

court granted Plaintiffs' motion in an Order filed December 1, 2005.

On December 13, 2005, Defendant Merritt filed an answer to Plaintiffs' amended complaint, asserting that this court's review "should be whether, based upon the record before the Benefits Plan Administration Committee of MeadWestvaco Corporation (including the submissions of both parties to this lawsuit), the decision of the Benefits Plan Administration Committee, made on or about November 14, 2005, that Defendant Barbara Jean Merritt 'is the rightful beneficiary of the . . . account of Mr. Roy R. Robinson,' constitutes an abuse of discretion conferred upon the Committee by the Plan documents." (Def.'s Answer at 5.) Also, Defendant Merritt included a counterclaim against Plaintiffs, asserting that she is the duly designated beneficiary and is entitled to the benefits plus interest and costs and attorney's fees. On December 21, 2005, Defendant MeadWestvaco plan filed its answer to Plaintiffs' amended complaint, stating that MeadWestvaco "initially made the decision to award the benefits of Decedent's Plan to Defendant Barbara Jean Merritt," but that the account was frozen upon learning of Plaintiffs' claims. (Def. Plan's Answer at 3.)

On February 21, 2006, Defendant Merritt filed a motion for summary judgment, asserting that the Benefits Plan Administration Committee determined that she was the rightful beneficiary and that there is no genuine issue of material fact. On March 13, 2006, Plaintiffs responded to Defendant Merritt's motion for summary judgment, arguing that a genuine issue of material fact exists as to whether the decedent "substantially complied" with changing his beneficiary. Additionally, Plaintiffs assert that the court is not constrained to reviewing only the administrative record, and that the court's review should be *de novo* rather than for an abuse of discretion. Lastly, Plaintiffs argue that even if the case is subject to review under the ERISA administrative review process, that the administrative record establishes that Plaintiffs are the proper beneficiaries pursuant

5

to the doctrine of "substantial compliance."

In Defendant Merritt's reply to Plaintiffs' response, filed March 22, 2006, Defendant Merritt asserts that the proper standard of review is abuse of discretion and that the Benefits Plan Administration Committee did not abuse its discretion in finding Merritt to be the proper beneficiary. Following a discovery dispute between the parties, Plaintiffs supplemented their response to Merritt's motion for summary judgment on June 6, 2006.

## **STANDARD OF REVIEW**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses

[that] have no factual bases." *Celotex*, 477 U.S. at 327.

## **DISCUSSION**

This case presents the court with a unique and somewhat dizzying situation, which results directly from the procedural history of this case and is evidenced by the parties' differing interpretations of this court's role in the matter. On the one hand, Plaintiffs have argued and continue to argue that this is a dispute between prospective beneficiaries that should *not* be subject to the administrative review process because no claim has been denied. On the other hand, Defendant Merritt asserts that Plaintiffs' interpretation is incorrect because the plan in fact determined that Merritt was the proper beneficiary and denied Plaintiffs' competing claim both initially and upon administrative review.

In this court's October 32, 2005 Order, the court recognized that the plan actually determined that Defendant Merritt was the proper beneficiary, resulting in a denial of Plaintiffs' claim. Additionally, because the plan denied Plaintiffs' claim, the court found that Plaintiffs' claim was subject to the administrative review process, contrary to Plaintiffs' assertions otherwise.

In light of the aforementioned, it is clear that this case does not present the typical scenario, whereby a fiduciary faced with competing claimants chooses not to resolve the dispute itself, but instead chooses to file an action for interpleader to allow the court to determine the rights of the competing claimants. Rather, in this case, the plan determined that Defendant Merritt was the proper beneficiary and paid the funds into an account established in her name. Only after almost five months and shortly before Plaintiffs filed their lawsuit did the plan freeze the account into which it had paid the funds. Upon administrative review, the plan affirmed the original denial of Plaintiffs' claim.

**I.     Applicable Standard of Review**

The parties dispute the relevant standard of review the court should employ in reviewing the Benefits Plan Administration Committee's decision. In her motion for summary judgment, Defendant Merritt contends that abuse of discretion is the applicable standard of review. In contrast, Plaintiffs assert that the standard of review should be *de novo*. Ultimately, because the court finds that the plan documents granted the plan discretionary authority, the court finds abuse of discretion to be the appropriate standard of review.[5]

"A denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1988). If there is sufficient discretionary authority, then the abuse of discretion standard applies and the denial will not be reversed "if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan,* 201 F.3d 335, 340 (4th Cir. 2000). This means that so long as the denial of benefits is the result of "a deliberate, principled reasoning process and . . . is supported by substantial evidence," it will not be disturbed. *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir. 1997).

Here, Section 11.04 of the plan, titled "Interpretations," provides the following:

> All interpretations pertaining to facts or provisions of the Plan made by the Plan Administrator or the Administration Committee shall be made in complete and exclusive discretion of the Plan Administrator or Administration Committee, as applicable, and shall be binding and conclusive on all parties. The Plan Administrator or Administration Committee, as appropriate, shall have the complete and exclusive discretion to resolve ambiguities and inconsistencies in the language

---

[5] However, as a practical matter, the court notes that even if it applied a *de novo* standard of review, its result would be the same.

of the Plan and to supply omissions in the language of the Plan.

(Exhibit B.)  The Summary Plan Description also provides that:

> Any interpretations related to facts or provisions of the Plan will be made by the Administration Committee, in its complete and exclusive discretion, and will be binding and conclusive. The Administration Committee will develop administrative processes and safeguards it deems necessary to ensure that all decisions are made in accordance with the Plan and other governing documents, and that the provisions of the Plan are applied consistently with respect to similarly situated claimants.

(Exhibit C.)  The plan explicitly grants "complete and exclusive" discretion to make "[a]ll interpretations pertaining to *facts or provisions* of the Plan," and therefore, the court finds that contrary to Plaintiffs' assertion, the abuse of discretion standard applies. (Exhibit B.) (emphasis added).

The Fourth Circuit has made clear that when a district court reviews a plan administrator's decision under a deferential standard of review, the district court may only review the evidence that was before the administrator at the time of the decision. *See Quesinberry,* 987 F.2d at 1025 (4th Cir. 1993) (noting that there are "significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator"); *Bernstein v. Capital Care, Inc.,* 70 F.3d 783, 790 (4th Cir. 1995) (refusing to consider plan administrator's evidence developed after the final denial of benefits); *Sheppard,* 32 F.3d at 125 (4th Cir. 1994) ("an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time").  Thus, the court is limited in this instance to the administrative record.

## II.    The Plan's Denial of Plaintiffs' Claim

Upon a review of the administrative record, the court finds that the plan did not abuse its discretion in denying Plaintiffs' claims.  First, with regard to the designation or revocation of a beneficiary, the plan states the following:

9

> (a)     Subject to the remaining provisions of this Section 10.07, a Participant may designate a Beneficiary under the Plan at any time. A Participant who fails to elect a Beneficiary or who does not have a valid designation of Beneficiary on file at the time of his death shall be deemed to have elected his spouse as his Beneficiary; except as provided in Section 10.07(c), if the Participant is unmarried at the time of his death, the Participant shall be deemed to have elected all of his living children equally as his Beneficiaries; if there are no such living children, . . .
> (b)     Subject to the remaining provisions of this Section 10.07, a Participant may revoke a prior designation of Beneficiary at any time by filing a written designation with the Recordkeeper. No such revocation or designation shall be effective unless and until it is received by the Recordkeeper before the Participant's death, in a form and manner that is acceptable to the Recordkeeper.

(Exhibit B.) Thus, the terms of the written plan clearly state that a participant may revoke a prior beneficiary designation by filing a written designation with the Recordkeeper.[6] (Exhibit B.)

It is undisputed that the decedent in this case did not file any such written designation revoking his prior beneficiary designation. Plaintiffs even state in their response to Defendant Merritt's motion: "It is undisputed that Merritt was the last written designated beneficiary under the plan. It is also undisputed that no properly executed change of beneficiary designation form was filed with the plan by the decedent subsequent to the 1998 designation of Merritt." (Pls.' Response at 3-4.) Because the plan granted discretion to the Administrative Committee to interpret both facts and provisions pertaining to the plan, and because the record before the Committee supports their decision that Plaintiffs were not the designated beneficiaries, the court finds that the plan's denial of Plaintiffs' claims was in no way an abuse of discretion. Nevertheless, Plaintiffs argue that pursuant to the doctrine of "substantial compliance," issues of material fact exist. The court

---

[6] The Summary Plan Description contains a less specific provision related to naming a beneficiary; it simply directs a participant to name a beneficiary in the event the participant dies before the account has been distributed. (Exhibit C.)

disagrees with Plaintiffs.

### A.      Doctrine of Substantial Compliance

Plaintiffs rely on *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554 (4th Cir. 1994), in support of their assertion that the decedent "substantially complied" with changing his beneficiary. In *Phoenix Mutual*, the insurer filed an interpleader action, asking the court to determine the proper beneficiary as between the son and wife of the deceased. *Id*. at 556. Because ERISA did not address the change of beneficiary issue presented in the case, the court applied the federal common law doctrine of substantial compliance.[7] *Id*. at 559-65. In *Phoenix*, the court explained that "an insured substantially complies with the change of beneficiary provisions of an ERISA policy when the insured: (1) evidences his or her intent to make the change; and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Id*. at 564. The insured "need only *substantially* comply with the change of beneficiary provisions of the policy to effectuate the desired change." *Id*. (emphasis in original).

In *Phoenix*, the insured visited the office of his employer to add his stepdaughter to his medical insurance and to change the beneficiary of his life insurance policy from his son to his wife. While at the office, he signed a "Dual Purpose" form designed to accomplish both goals, but he did not fill in the blank line next to the "Changed Beneficiary To" designation on the form. A few weeks later, the insured called the Financial Accounting Manager to confirm the change to his

---

[7] The court was careful to limit its holding to the facts before it, stating: "We do not hold that the federal common law of substantial compliance is applicable in any context other than that before the court in the instant case, the change of beneficiary provision in an ERISA plan. Thus, we limit our holding to the facts before us." *Phoenix,* 30 F.3d at 565.

11

policy.  When the insured called the Manager, the insured requested that the Manager change his beneficiary to his wife, and the Manager made a note on his "to do" list.  The Manager, however, did not make the necessary change to the insured's policy, and several months before the insured died, the Manager quit working there without ever having made the necessary change.  *Id.* at 557.  Based on these facts, the court found that the insured substantially complied with the terms of the policy to change his beneficiary.  *Id.* at 567.

Undoubtedly, the facts of *Phoenix* are distinguishable from the present case.  First, in *Phoenix*, the insurer actually filed the interpleader action to determine the proper beneficiary.  Such is not the case in the matter *sub judice*, where the insurer initially determined that Defendant Merritt was the proper beneficiary and denied Plaintiffs' claims both initially and upon administrative review.

Second, and more importantly, in *Phoenix*, the insured clearly took affirmative action to effectuate his change of beneficiary: he visited his employer's office and signed a "Dual Purpose" form, he called the Financial Manager to confirm the change, and the only reason the change was not completed was because the Manager failed to make the change.  *See* 30 F.3d at 557-58.  As the court stated, "it would appear that, given the evidence of record, Bill Adams did substantially comply with the change of beneficiary requirements by taking all reasonable steps to accomplish that end."  *Id.* at 565, n. 26.

In the present case, Plaintiffs allege that the decedent obtained a password and visited the plan's website, allegedly with the intent to change his beneficiary.  Plaintiffs also allege that the decedent read the language of the website and concluded that Plaintiffs were his beneficiaries pursuant to that language and because the website contained no current beneficiaries.  Unfortunately

12

for Plaintiffs, however, this evidence simply fails to satisfy either portion of the "substantial compliance" test as a matter of law.[8]  First, the decedent's alleged visit to the plan's website does not evidence his intent to change his beneficiary.  As the court stated in *Phoenix*, the point of the doctrine of substantial compliance is "to give effect to an insured's intent to comply when that intent is evident."  *Id.* at 564.  While internet records show that the decedent visited various portions of the website, there simply is no way to discern the decedent's intent in visiting the website, what he actually read on the website, and/or what he interpreted from the website.  Plaintiffs' assertion that the decedent's visit to the website somehow evidences his intent to change his beneficiary, therefore, must fail.

Second, the decedent's visit to the plan's website in no way constitutes "positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy."  *Id.*  Plaintiffs argue that the decedent visited the website, read the website, and concluded from the language of the website that Plaintiffs were his beneficiaries.  Not only is there no way to discern what the decedent actually read or concluded from the website, but also, the decedent's visit to the website, without some other "positive action," does not demonstrate that the decedent "*substantially* compl[ied] with the change of beneficiary provisions of the policy to effectuate the desired change."  *Id.*

For the foregoing reasons, the court finds not only that the plan did not abuse its discretion

---

[8] Plaintiffs argue that "whether the policy holder took steps to effectuate a change [in beneficiary] is [] a question of fact."  *Phoenix*, 30 F.3d at 565.  Thus, Plaintiffs claim that summary judgment would be inappropriate.  However, where, as is the situation here, the court finds that no material issues of fact exist because no rational factfinder could find for Plaintiffs, disposition by summary judgment is appropriate.  *See Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate.").

when it denied Plaintiffs' claim, but also, that no issue of material fact exists with respect to whether the decedent changed his beneficiary designation via the doctrine of substantial compliance. Therefore, the court grants Defendant Merritt's motion for summary judgment.

## CONCLUSION

It is, therefore, **ORDERED** for the foregoing reasons that Defendant Merritt's motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**June 23, 2006**